The first case to be heard is USA v. Jamal Clinton, and let me just briefly state what you may already know, which is that counsel will have the full time allotted to them, perhaps a little more, before any of the judges ask any questions. When they've completed their time of argument, I will call on my colleagues in the order of seniority, and we will pose whatever questions we may have. So let's hear from counsel in USA v. Jamal Clinton. Good afternoon. May it please the court. My name is Jesse Siegel. I represent Mr. Clinton. Mr. Clinton is almost 43 years old. He's serving a sentence of 210 months or 17 and a half years for selling around 500 grams of powder cocaine. We have raised three arguments as to why Mr. Clinton's sentence should be vacated. First, we've argued that the district court erred when it found Mr. Clinton to be a career offender as the instant offense conspiracy to distribute and possess with intent to distribute cocaine under Section Title 21 United States Code 846 does not qualify as a predicate conviction under the career offender guideline. The government correctly argues that our argument is now foreclosed by the court's decisions in United States v. Tab and United States v. Richardson, neither of which had been decided when we submitted our brief in December 2019. This panel is bound by those decisions. Nonetheless, there is a split among the circuits regarding this argument. Specifically, the Fourth Circuit in United States v. Swinton disagrees with that conclusion. Therefore, this may be an issue which the Supreme Court will review. So we are while conceding that in this circuit, our argument is foreclosed. We do not abandon it and reserve our right to petition the Supreme Court for tertiary. Um, we've raised two other arguments which are related. One, we've argued that the district court erred when it failed to consider the need to avoid unwarranted sentencing disparities as required under 18 U.S.C. Section 3553 A-6 or address why the disparities in this case did not require a lower sentence. And relatedly, that the 210-month sentence imposed on Mr. Clinton was substantively unreasonable for various reasons, including the far lower sentences imposed on co-defendants who were either much more involved in this offense than Mr. Clinton, namely co-defendant Jalyn Allen, who received a sentence of 41 months, or co-defendants whose involvement in the offense and criminal histories were roughly similar to that of Mr. Clinton, namely co-defendants Michael Monsanto, who received a sentence of 41 months, and Daniel Williams, who received a sentence of 37 months. We've also argued that the 210-month sentence imposed on Mr. Clinton was substantively unreasonable due to the extremely short duration of his involvement in this conspiracy, which was three months, his role in the conspiracy, which was as a customer of a member of the conspiracy, not a member of the blood gang, and that he had engaged in no violence. The government makes various legal arguments, which I'll address in a minute, but does not factually dispute that Allen was far more involved in the offense that was the subject of this investigation than Mr. Clinton, or that the involvement in criminal histories of Monsanto and Williams were roughly similar to that of Mr. Clinton, yet he received a sentence that was more than five times as long as any of them. The government's main arguments is that the district court was not required to consider or address disparities among co-defendants, as Section A6 is primarily addressed to unwarranted national disparities, not unwarranted disparities within a case, and furthermore, the government maintains the district court did consider defense counsel's arguments that although they didn't address them, the district court said it had considered the arguments made by defense counsel and that that was sufficient. We would argue that if that's in fact true, then the district court's analysis of those sentencing discrepancies, unwarranted sentencing discrepancies, are fair game. That is, if the district court considered Mr. Clinton's argument that his sentence should be consistent with those imposed on his co-defendants, then the court's conclusion that it was still appropriate to impose a sentence five times longer is subject to appellate review. Of course, such reviews hampered by the fact the district court did not give its reasons. In its brief, the government relies on United States v. Wills, a 2007 case in this court. In that case, the district court had compared Mr. Wills' sentence to his co-defendants under Section A6. This court found the sentence was procedurally unreasonable because the district court noted only differences between Wills and his co-defendants but did not examine similarities between them. Excuse me, you have a minute left. Thank you. The court looked at the merits of the disparities argument put forward by Mr. Wills and the court found that this constituted a legal error. The sentence was unreasonable because it was based on legal errors. There are a number of points regarding the disparities argument that I have, but one of the things I'd like to highlight is the practice in the district courts within the circuits in which the district courts do seek to avoid unwarranted sentencing disparities among co-defendants routinely. It is routinely addressed in sentencings in large gang cases of this type and district judges will routinely ask prosecutors where a particular defendant stands in relation to his co-defendants. I'm not exactly sure of our procedure here. I'll I'm sorry. Go ahead. Go ahead. I would also note that in the cases cited by the government, while in those cases, the court clearly does say that district courts are not required to consider disparities among co-defendants. In those cases, not only does the court make that point, but then the court actually addresses the merits of the arguments that there were unwarranted sentencing disparities among the co-defendants. I would at this point, let me turn to my colleagues who may have questions for you, Mr. Siegel. So let me turn first to Judge Laurier. Any questions? Good afternoon, Mr. Siegel. Always a pleasure to hear you and your voice. You mentioned, and I thought you might reference this, the actual practice of the district courts in connection with determining whether among co-defendants in a case there is any unwarranted disparity. Have we ever, in any presidential opinion that you're aware of, cited to the actual practice as a reason to supplant our other case law, the case law that I think you also referenced, that says that we're really talking about nationwide disparities, not disparities within the same case and among co-defendants? We've said that repeatedly. So have we ever done that? And then I've got a follow-up question. I did, in doing research, I did not come across that being in any of this court's published decisions that is any commentary on the usual practice within this circuit in the district courts. And you also suggested that you didn't quite state it, but I want to understand what your position is, that the district court here, in fact, did consider the disparities. And as I think the government points out somewhere in its brief, the defense counsel talked about at some length the existing disparities that might arise depending on what the sentence was. And the district court said, consistent with U.S. v. Fernandez, that it had considered the arguments of defense counsel, considered the submissions and so on. Why isn't that enough? Well, under controlling law, that might be enough to conclude that the district court had, in fact, considered those arguments. However, there's nothing else in the judge's decision to indicate that it, in fact, had considered that. And the point that I was trying to make was that, well, if, in fact, the court considered it and rejected it, then this court is able to consider whether or not the district court was justified in essentially rejecting those arguments, as, in fact, this court did in the U.S. v. Wills case. Okay. Judge Manasci? Yeah. So when the district court is imposing a sentence, it can consider not just the defendant's role in the offense, but also his criminal history, right? Yes, sir. So even if we had a rule about unwarranted disparities between defendants, it would have to take into account not just his role in this offense, but also whether the disparity or the sentence was justified by the defendant's particular criminal history. That would certainly be appropriate. However, as I pointed out in Mr. Clinton's brief, Mr. Clinton's record was very similar to two of his co-defendants, both of whom were in criminal, like him, were in criminal history category six. He was in criminal history category six, both because he was a career offender, or because he was a career offender, but even if he had not been, based on the number of criminal history points he had, which if I remember correctly was either 18 or 19, but two of the co-defendants also who received far lower sentences also had, were in criminal history category six. So while it would be appropriate to look at his criminal history in terms of analyzing the disparities, there was not a significant difference between the defendants to justify the disparate treatment. And those two co-defendants were Michael Monsanto and Daniel Williams. And in Mr. Clinton's brief, we went through their criminal histories and I believe it was Mr. Williams, who I argued had a worse criminal history than Mr. Clinton because his involved violence and Mr. Clinton's did not involve violence at all. There might've been like a one or two point difference in their criminal history tally and that Mr. Monsanto's criminal history was roughly similar to that of Mr. Clinton. That's great. Well, thank you very much, Mr. Siegel. I assume we have Mr. Silver is with us today. Yes, your honor. Go ahead. Thank you very much. I think it's without question in this court, as recently as this year, reaffirmed that a district court has no legal obligation under the sentencing factors to consider the statutory sentencing factors to consider the disparity of sentences among co-defendants. And the court said that in United States versus Alsius, again, this year, here, as Judge Lohier pointed out, the written submissions of defense counsel made the argument that Clinton should receive a sentence, not unlike the sentences imposed on his co-defendants. And the court said that it had considered those written submissions. Also at the time of sentencing, defense counsel made the same arguments, obviously orally and before imposing sentence when addressing Mr. Clinton, the district court said, I'm aware of the argument, you know, the legal obligation for the district court to have considered these arguments. It appears from the record that it did so. The one thing that I think counsel for Mr. Clinton doesn't place sufficient emphasis on is that Mr. Clinton was the only defendant that we're discussing here, was discussed in Mr. Clinton's brief, that was a career offender. So it may be that there are certain similarities between the criminal histories of the co-defendants and Mr. Clinton, but only Mr. Clinton had the type and quantity of criminal history convictions that required the imposition of a career offender guideline. And that distinction in and of itself, in the opinion of the government, addresses why disparate sentences were imposed. And as well, to the extent counsel for Mr. Clinton argues that, you know, we're unable to determine what the district court did in its analysis of this disparity. Again, as recently as this year, the court said in its analysis, and I think it follows, that if there's no legal obligation to consider sentencing disparities among co-defendants, there's no concomitant obligation by the district court to discuss or address the arguments alleging these sentencing disparities. With respect to the substantive reasonableness of the sentence imposed, the district court made clear that Mr. Clinton's criminal history spans some 25 years, beginning with age 16 years of age. And obviously, he has a number of serious felony controlled substance convictions, and a series of violations of parole, including the instant conviction, which Clinton engaged in just five months after his most recent release from prison, and while he was on a term of parole supervision. And finally, when the district court imposed sentence, it made clear that it had considered the demands of the parsimony clause, and it listed the relevant section 3553a factors upon which it was basing its sentence. So, I don't think there is a basis to conclude that somehow the district court abused its discretion by imposing a within-guideline sentence. Thank you, Your Honors. Thank you, Mr. Silver. Let me ask my counsel there, my colleagues, whether they have any questions. Judge Laurier? I do. Just a few brief questions. Ms. Silver, thank you. Always also a pleasure to hear your has received a sentence like this anywhere in the country. Well, I don't know how to answer that question. I mean, any defendant who has been correctly determined to be a career offender, presumably received a sentence, or I can't say all of them, but those where a variance was not deemed appropriate, would have received a similar sentence. Mr. Clinton? This is 17 and a half years in prison, is that right? That's certainly about right. I'm still thinking in terms of months. You know, counsel for Mr. Clinton today raised the question that he had not engaged in violence, and he was not a member of the gang that was the principal subject of the investigation. But his sentence was not enhanced in any way because he engaged in violence or because he was a gang member. The career offender calculation results from the nature of the instant conviction and the nature of Mr. Clinton's prior convictions, which involved the distribution of controlled substances. So there was, I understand as I take it, from what's been said and also what's not been said, no effort to show a nationwide disparity on a nationwide basis. That is that he was alone among similarly situated defendants nationwide, is that right? It's right that I did not attempt to make that showing because Mr. Clinton never argued that there was a nationwide disparity. Well, that's what I'm saying. He never made that argument. Okay. And just a follow-up question. I've been, as you know, Mrs. Silver and Mrs. Siegel also knows, impressed in your position at the podium, real or virtual. And is there not a limit to this rule? In other words, and I recall a particular case that neither side cited, U.S. v. Kisezi, where let's say that you've got two brothers who engage in, and I believe in that case, a form of security fraud. And they did exactly the same thing. And the district court judge who is the sentencing judge for both sentences, one to 10 years and the other to five years. Is there not at that stage, even though it's a within a single case, a significant disparity, five years and 15 years, don't we dispense with our ordinary rule in that case? Is there not a limit? I would not say that there is no limit, Your Honor. And the analysis may not follow the unwarranted disparity factor in Section 3553 in determining perhaps that the too long for another reason. I can't say that a sentencing court should not look to other sentencings as a point of reference. And certainly, if the district court here had said, I find a 210-month sentence to create a disparity that is unwarranted, I could not say that was an abuse of discretion. I hope that answers your question. That's helpful to know the government's position. Thank you. Thank you, Judge Minasci. Yeah, I think your point about Mr. Clinton's criminal history, but his counsel just said that Mr. Monsanto and Williams had similar or worse histories. Is there anything you want to say about why the sentences were justified, considering those histories, the disparities? Briefly, Judge, I looked at them to confirm that none of them were career offenders. And you know, obviously, the guidelines are no longer mandatory. But case law seems to be clear that they are the starting point, at least for the analysis of the reasonableness of any sentence. And the guidelines have chosen to treat drug distribution convictions more harshly, if you will, than possession of controlled substance convictions, meaning that in order to be classified as a career offender, the prior convictions must involve manufacturer or distribution or, for our purposes, distribution. And while there may be a similar number of drug convictions for one or more of the defendants that Mr. Clinton has pointed to, they are not distribution offenses. And it's not irrational for the sentencing guidelines to have drawn that distinction, or for the court to have relied on it as well. Thank you. Let me just check whether I can be heard. You can. My mute button doesn't seem to be working. So that's important to know. Thank you very much. I have just a simple question for Mr. Silver. Yeah, I think we've already got the video back. Are you there? I am, but there does seem to be a interference. Someone needs to mute. Yeah, there seems to be a situation. There you go. Okay, I'm back. Am I back? You are back, Your Honor. Mr. Silver, like Judge Laurier, it's nice to hear you or to see you again in some sense. You are a regular, of course. Let me ask you the simple question, which I think Mr. Siegel's already answered, about the United States against TAB, our recent decision in a similar case. I gather you agree that it's controlling with respect to Clinton's argument. Is that right? That is correct, Your Honor, and I hope the court received a 28-J letter I submitted referencing the fact that a petition for rehearing in TAB has been denied, and there is another reported decision from the court in United States versus Richardson reaching the same result. Great. Thank you very much. Any other questions from my colleagues? I take it no. No, thank you. Great. Appellant's counsel, have anything to add? Yes, thank you, Judge. Just to make things easier for the court, Mr. Monsanto's criminal history is summarized in our brief at page 33, and Mr. Williams' criminal history is summarized at pages 34 to 35, and I would just note that a lot of the information here is drawn from the government sentencing submissions for both of those gentlemen, and the government was not as kind in describing their criminal histories as counsel here has been. With regard to the Alcius case, which the government relies upon, that's another case in which the court noted that the district court had not been required to consider the question of disparities among co-defendants, but then went on actually to examine the nature of the disparities and determined that Mr. Alcius was not similarly situated to his co-defendant, who was his mother. And the final thing I would note is when the court is considering Section A-6, which was admittedly, when it was enacted, addressed to national disparities, that does not mean that that is the only thing that's relevant. In Wills, the court noted that there's nothing in A-6, the statutory language, which limits the disparities which a court should or can examine. And of course, the court's opinion has always been that the court permits district courts to consider that. But, you know... The question, Mr. Stegall, the question, Mr. Lohier, is when do we assign error, right? And you've, I think, conceded, and Mr. Silver has also suggested that we assign error when there's a failure to consider nationwide disparities, but that there is no assignment of error when there's a failure to consider, assuming there is a failure, to consider disparities within a particular case among co-defendants. And I think, and I had taken Your Honor's question to mean that that doesn't seem to be appropriate, that under certain circumstances, it's appropriate to look at disparities that exist within cases, and that this court should take note of them, unless I misunderstood the question. And... There's a limit, yes. There's a limit to the rule, and that's what I was trying to elicit from the government. Correct. I mean, sorry, I don't mean to say you're correct. That's how I took the court's question as well. And certainly, if there is to be any limit, then I would argue that the five times sentence imposed on Mr. Clinton, compared to his similarly situated co-defendants, has got to be over that limit. Okay. I've nothing else to add, unless the court has any more questions. I gather not. So, thank you very much. We'll reserve decision.